Let's go on to INNOVENTION TOYS v. MGA. MR. NIKODIMA Mr. Nikodima, Police Court. Your Honors, the question that this Court has to decide is whether the tower piece used in MGA's laser battle game is movable under the rules of the game. In the same way that in the game of chess, the rules allow the king to move to different spaces to avoid being captured and to capture the pieces of the opposing player, or in the same way that the 242 patent describes and claims movement of the target piece, the key piece, to avoid being hit by the opposing player's laser. And respectfully, Your Honors, we submit that the answer to that question is no. And we've brought with us a board showing the rules of laser battle. MR. NIKODIMA Let me ask you a question. I don't play chess, so I may have something wrong, but chess, you all start out with your pieces placed in a certain location, right? MR. NIKODIMA Yes, each side of the board is a mirror image of the other, just like in laser battle. MR. NIKODIMA But isn't there some strategic placement in the accused's game when you put the pieces down for the first time? MR. NIKODIMA Absolutely not, Your Honor, and I can show you. MR. SORENSEN If I put my tower in the corner, I haven't changed the game? MR. NIKODIMA You don't put your tower in the corner. The district court MR. SORENSEN But I can put it, starting, I can put it in a different location, can't I? MR. NIKODIMA But each side of the board has to be a mirror image. MR. SORENSEN Sure. MR. NIKODIMA There's no strategy in the setup, because strategy means something you do during the game to give yourself an advantage over your opponent, and in setting up laser battle, each side of the board is a mirror image of the other, and in these eight formations that the district court relied upon, Your Honor, it's the other, this is Appendix Page A, 1986, here are eight different game formations, one for four players in the lower right-hand corner, the other seven for two players, and everyone starts out at equal footing. We could look at any one of these. The tower pieces are right across from each other, and the mirror pieces are lined up identically, and Your Honors, if you would, focus on the patent itself in Column 8, lines 20 to 25, where it says the players can agree to set up the board a certain way as long as both sides of the board are mirror images of the other, and there's no strategy there, and I think that's where the district court went wrong here, because MR. SORENSEN Is there a requirement that the pieces be placed in mirror image? MR. NIKODIMA I believe there is, Your Honor. MR. SORENSEN Where? MR. NIKODIMA Under the rules, it shows, here are the game formations, and each one of these, it says place them in mirror images, but MR. SORENSEN Does it say that? Where does it say that? MR. NIKODIMA The words are not there, Your Honor, but it shows that in the figures, but I think the predominant point here, Your Honor, is that where you place the tower piece, the rules specifically say it should not move at any point during the game. MR. SORENSEN Well, but the user manual says, except for advanced gameplay, the target tower, which suggests that if you're in advanced gameplay, you might put them in non-mirror image places, right? MR. NIKODIMA I don't agree, Your Honor. Let's look at what that MR. SORENSEN Well, why would they say, except for advanced gameplay, the standard formations are used? MR. NIKODIMA I'd like to read the exact note that's on the previous page. It's on the other slide. MR. SORENSEN I'd like you to. MR. NIKODIMA Your Honor, here's the note. It says, except for advanced gameplay, the target tower and laser guns will remain in their standard positions in all formations. MR. SORENSEN Mr. Nikodima, you don't really believe we can read that from here, do you? MR. NIKODIMA You know, Your Honor, I can't even read it from here. MR. SORENSEN But I was hoping that because the rules, the copy and the appendix were so small that I thought I'd help you out with the boards,  MR. NIKODIMA It's just testimony to the usual futility of lugging these things into the court. MR. SORENSEN And I usually never do. But that part about advanced gameplay concerns setting up the pieces in a nonstandard place. It doesn't talk about moving the tower during the game. And, Your Honor, the construction MR. NIKODIMA No, but the claim doesn't say anything about moving it during the game. MR. SORENSEN Well, the court's claim construction says movable means capable of movement according to the rules of the game or game strategy. Well, the rules of laser battle say don't move this tower piece. And this is why. Because the tower has one reflective, one reactive surface on it. And when the laser of the opposing player's laser gun hits this tower, lights go off and there's an explosion. That's the fun of the game. And this reflective piece is only on one side. If this tower could be moved during the game, one player could position it like I have it here. MR. NIKODIMA But we're back to the, you keep saying during the game. That doesn't appear anywhere in the claim construction. MR. SORENSEN Well, the construction says as called for by the rules of the game or game strategy. MR. NIKODIMA Yes, as called for, but doesn't the game start when you set it up? MR. SORENSEN But that's set up. There are limitations in the claims, that talk about setting up the game. And if movable, in accordance with the court's construction meant set up, those limitations would be superfluous. What the court did was, it said, set up, there is strategy in the setup of laser battle. And there's not. MR. NIKODIMA What you started, and I either missed it or you didn't finish. What does this except for advanced game play, the target tower and laser guns will remain in their standard positions in all formations mean? MR. SORENSEN That means that you can put the towers in something other than its standard setup position to start the game. But the only figure, showing that, the only figure in advanced game play, shows the towers are in the same positions on the board as in all the other configurations, like in classic game play. There is no figure, there is no description in these rules that say the tower is a piece that can be moved around. MR. NIKODIMA Because if it's advanced game play, it could be anywhere, right? There's no way to show all the figures of how they can possibly be placed. They can be placed anywhere on that board. MR. SORENSEN Well, I don't believe they can be anywhere, Your Honor, because of this reactive surface. It's only on one side. And what would happen is, it would be a very different game. You would alter the game. Somebody could position their tower on the board so the laser never hits the reactive surface. It only hits the back of it where there's no reactive surface. MR. SORENSEN Mr. Nikodima, why wasn't the district court correct when it held in summary judgment that there was not adequate evidence of obviousness? MR. NIKODIMA Well, Your Honor, initially, the district court refused to even consider a combination of the two main prior art references, the Swift patent and the laser chest articles. And the district court came to that conclusion, in our view, for one reason, because the Swift patent was a physical board game and the laser chest articles were electronic laser board games. That reason alone. And the district court held you wouldn't combine them because they're not analogous because one's electronic and one's physical. And we believe, as we've briefed, Your Honor, that that cuts against the flexible standard of KSR. The district court applied too rigid a standard. KSR counsels that you look to the ordinary creativity, ordinary judgment and common sense of the skilled artisan. Now, in the 242 patent itself, it incorporates, by reference, prior art strategy games, the 286 patent in particular, which says you can play on a computer or have a physical board game. The inventor of the 242 patent, Mr. Larson, he said in a declaration, we're taking our physical board game and bringing it to the computer screen. So the worlds are not so different. Even if we agree with you on that point, Mr. Nicodima, how do you deal with the rather impressive secondary considerations evidence, the awards they're winning, the commercial success and so forth? That again is Mr. Larson's declaration, Your Honor. And as we've stated in our briefs, he did not show a proper nexus because the nexus has to be to the elements of the claims and the most that Mr. Larson describes the invention as is a laser board strategy game. But that isn't what he claimed. There are very specific limitations. The key piece moves. It has a non-reflective surface. The other pieces can move in different directions, horizontal, vertical, and diagonal. But don't these awards and testimonials at least provide some evidence that this is a non-obvious game? I mean, if it's just another chess game, that's not going to win awards. I think what it does is at minimum create a genuine issue of material fact, Your Honor, because you have to have a specific nexus to the claim features. Otherwise, the nexus requirement would have no value. And I see I'm into my rebuttal time, Your Honor. All right. Thank you, Mr. Nicodemus. You can save it, Mr. Otis. Thank you, Your Honors. Good to see all of you again. May it please the Court, I'm also accompanied by my client, Dr. Larson, one of the inventors of the 242 patent. There are two fundamental problems with MGA's argument that the district court's infringement findings should be reversed. First, MGA in its appeal papers improperly attempts to narrow the district court's claim construction of movable so that it is limited to movement only during game play. MGA's proposed narrow construction is not supported by the claims, the specification, or the file history. Second, the second fundamental problem with their argument on infringement is that with respect to the application of the term movable to the accused laser battle product, MGA pretends that the tower piece is not movable when clearly it is. So let's talk first briefly about the construction of the word movable. The district court, Your Honors, got it right. The district court said that, determined that movable means capable of movement as called for by the rules of the game or game strategy. And the defendant's attempt to argue that the district court correctly construed movable but then impermissibly modified it within the same order. But that's not right. The district court, in its order, made clear that the defendant's proposed construction on summary judgment, which would have limited to movability to movement during game play, was too narrow and wasn't supported by the intrinsic evidence. What about the claim language? In looking at, for instance, independent claim 31, you've got the movable key playing pieces in the first phrase. Yes, Your Honor. The second one talks about alternate turns taken to move the playing pieces so that the claim itself seems to define movement as something happening within the game play. Well, I think the claim, and that's a great question, because I think the claims and the claim language itself very clearly shows that movability has to do with both game play and setup. So if you look specifically at claim 31, like you just were, Judge Rader, it says a game board, movable playing pieces having at least one mirrored surface, movable key playing pieces, et cetera. And then it talks about moving them during game play. But in order to start and set up the board in the beginning, you have to be able to put pieces on the board. This is actually a huge product. We're talking about claim construction here, but it works the same way. It's disclosed the same way in the patent. And now if you look I think this is also very important. So with respect to claim 31, I think the movability does speak, as discussed throughout the specification, throughout the entire patent, about the ability to place that key piece, the pharaoh, as disclosed in the patent, or if we're talking about infringement, the tower in laser battle, anywhere you want on the board, just like any other piece. But I was just going to say— You wouldn't place it the way you just placed it, because the face is out away from the playing surface. You'd have to place it on an edge with that facing inward. You could either place it on an edge or, I mean, I think you could definitely move it during the game. I mean, we're crossing into infringement now, but as the rules of the game say, the tower piece should remain in the same place except during advanced game play. I think that very clearly indicates to a purchaser and user of the game that they can move the tower piece however they want. Mr. Roddison. Yes. Obviousness. Pretty unusual for a trial court to grant summary judgment of obviousness. You mean of non-obviousness? Of non-obviousness, that's right. I mean, without a trial there must be genuine issues. Here you're going from—usually the direction of technology is toward electronics. Here you're going in sort of the opposite direction toward a board game. Yeah, that's right. I would think there are real issues with non-obviousness or obviousness. Well, I think your point about the direction of—the usual direction is to convert a board game to an electronic or a computer version, and I think that's a really point here. So first of all, with respect to— But that means that the idea of a board game is not a novel, obscure one. It just hasn't been done with respect to this kind of game. Well, here's what's interesting about this point, Your Honor. But that goes to the question of whether there are genuine issues. Yeah, I mean, I understand your point, but the thing is in this prior art that was identified on these motions—and they were cross motions for summary judgment of obviousness or non-obviousness or validity—the only prior art identified were the laser chess articles and the Swift patent, which was discussed in detail. But the question is simple. The question is, wouldn't one of skill in the art realize looking at an electronic game that they Judge Laurie's point was a really good one about moving from board games to video games. There were some other kind of secondary or tertiary prior art articles cited where there was a conversion from a board game to a video game, but every single one of those was just that. It talked about the conversion of a board game to a video game and not vice versa. So we're in the Hutchins patents. All of them talked about the conversion of board games to video games, but not vice versa. Now that's important, and I'll tell you why. The physics and the mechanical engineering problems and the optics necessary to create a physical board game from the laser chess video game are very different, and they weren't considered or disclosed. There was no consideration or disclosure of how to solve those problems in video games. Swift is a board game, right? Yes, your honor. And it says obvious modifications will allow you to play against a computer. So Swift, a board game, is incorporating already a computer application. It seems to me like this art moves back and forth pretty easily. Well, again, I don't think so. And let me again explain why. Let me give you kind of a more a simple analogy to explain why I don't think that's the case. Think about that Disney movie from the 60s or 70s, Chitty Chitty Bang Bang. It was about a flying car. Well, just because you have a movie that discloses a flying car doesn't mean that it discloses anything to even an aeronautical or automobile engineer about how to create a flying car. There's no disclosure in that movie about how to do it. It's the same thing with laser chess. I mean, basically, you've got things like hypercubes, where if you move a hypercube, your piece disappears and goes somewhere else. And the angles are different. I mean, there are a lot of things about that game, or I should say there are a lot of things about the invention, the 242 invention, that are not disclosed in the laser chess game. For example, actual angles, optics, lasers and targets, alignment. Angles don't change. Well, I mean, it depends, Your Honor. I mean, it's an engineering problem to make something that's physical where the alignment is correct and accurate and will actually work. I mean, some of the pieces reflect the light at a 90 degree angle while keeping the laser beam parallel to the plane surface. I mean, we're talking about a real world system that's in three dimensions, as opposed to something on a video screen that was in two dimensions and, by the way, was created 20 years ago. If it was so obvious, why didn't somebody come up with a laser chess game or something similar to laser chess in a physical embodiment a long time ago? What about the level of ordinary skill in the art of the inventor? Yeah, so I think what the district court was doing with the level of ordinary skill, Your Honor, was recognizing that, on summary judgment, the defendants had a failure of proof on what the level of ordinary skill was. Basically, the defendants, and it was not counsel here, it was prior counsel for MGA, but their basic argument was they were dismissive. They were so dismissive of the invention, they said, hey, this thing's so obvious in light of laser chess that anybody could have done it. Level of skill in the art is irrelevant. And the district court recognized that there was a failure of proof. But at the same time, the district court also mentioned, and this is on page A43 of the appendix, it's actually the paragraph that bridges A42 and A43, the district court said, it seems some knowledge of mechanical engineering or optics is required. But there was a failure of proof here. There was no prima facie case of obviousness made by the defendants because they did not submit evidence of what the level of ordinary skill was. So your feeling would be that even if the level of ordinary skill in the art were somebody that had some laser experience, it doesn't make any difference because the defendants didn't offer that trial? Well, yes, Your Honor. And even if the level of ordinary skill, even if the district court had found that the level of ordinary skill was higher involving some knowledge of mechanical engineering and optics, which he seemed to indicate a recognition of, there was still no prima facie case of obviousness because, again, the laser chess articles and video games wouldn't have disclosed the physical things about creating a physical embodiment that would have been necessary. Mr. Roddison, when I raised the secondary considerations, Mr. Nicodemus dismissed those as lacking a nexus. Is he correct? Absolutely not, Your Honor. With respect to nexus, under the D'Amico case, as the court is well aware, if the physical embodiment or the product that is commercially successful practices the claims of the patent, there is a prima facie case of a nexus, and that's the case here. The Kett game practices the patent. In fact, this patent is a description of the Kett game with the Faros and the Jeds and the Pyramids and the board configuration, the whole nine yards. That is what a three-man company sold 140,000 units of with very little game of the year. I mean, they got a Mensa award. I mean, this was a very significant advance in terms of games, board games, and it was recognized as such. So I think the fact that the laser chess games that were made 20 years ago on a video screen were never, nothing like them was ever embodied in a physical three-dimensional game, and together with the secondary considerations, is a very strong indication that this patent is not obvious. And they just submitted no other prior art, and that's why, to your question, Judge Lurie, there was a summary judgment of non-obviousness. They didn't submit anything else. That was it. Can I go back for a second to the movable issue? Yes, Your Honor. What's your understanding of the rule or the statement that except for advanced gameplay, the target tower and laser guns will remain in their standard positions in all formations? Well, I think it's pretty clear, Your Honor. First of all, if you look at the rules, and they don't have a board with this particular page of the rule book on it, this is page A, 1987, and it shows here, I've highlighted, it's got some alternative board configurations. So as an initial matter, when you set up the tower piece, there's no way in those alternative board configurations that it's going to go in the same spot as in this board configuration. There's no way it would work. And so you have to, according to the rules, let's see if I can get it here, he said, movable means capable of movement as called for by the rules of the game or game strategy. That includes setup. There's no doubt that it does. And if you use one of those alternative board configurations, which are only suggestions, they're only suggestions in the rules of laser battle, the accused game. It says, hey, there are lots of ways to do this. Set it up any way you want. And there's no way you can do that unless the tower piece is movable, which clearly it is. And I also believe, Judge White, that that statement in the rules where it says except for advanced gameplay, the target tower and laser guns will remain in their standard positions in the, that target piece around the board, just like the other pieces. With those alternative setups, once the setup is made, the key piece doesn't move, does it? Well, that's one way to play the game. And that's what the rules say. But it doesn't say that's the only way to play the game. Now, they also argued that if you allow the target piece to be moved, you're going to create a game that can never be won. Well, I just don't think that's the case. If the players agree that they can move them around, and clearly this game has the capability to move the tower piece anywhere you want it, then you're going to create a game that's going to be a lot of fun for kids or other people to play. I mean, Tic-Tac-Toe is a game where if you have two adults who are paying attention, it can never be won. But it doesn't mean it's not to play. I mean, I play with my six-year-old, and it's fun because sometimes I let her win, right? But I mean, there are lots of ways to play this game. Always on purpose? I'm sorry? Well, you know, I'm embarrassed to really answer that question, so I'm going to plead the fifth on that one. But clearly, this game has the capability to move the tower piece or any of the other pieces anywhere you want. All right. So I see I'm over. Thank you, Mr. Robinson. Thank you. Mr. Nicodema, could you add one minute to Mr. Nicodema's time, and we'll be about even. You have five and a half minutes. Okay. Judge Lurie, I think you hit the nail on the head when you were looking at the patent claims, and I believe you said there was a distinction between setting up the pieces on the board and the movement of the key piece during the game. In the Court's opinion on A20, page 12, the Court quotes Claim 39, and one limitation is placing each player's set of playing pieces on the game board in a predetermined starting configuration. And then after that, it talks about what the pieces do in alternating terms and how they can move. Now, counsel's position here, you might as well throw the rules out the window. The Court rules matter, and the laser battle rules say the tower piece should remain in the original position at all times. That has to mean something. If a kid using the game takes it and decides to play an entirely different game, they have altered or modified the game, and now we're away from cases like Revolution Eyewear and Fantasy Sports. What the District Court did is say, well, movement also means strategically setting up pieces. Well, there is no strategy in setting it up. They haven't proved that there's any strategy in the laser battle rules in setting them up. Each side of the board is a mirror image, so nobody has an advantage. And I think what counsel is doing is trying to resurrect the construction of movable that the District Court rejected, possible to move, allowed to move. In footnote 15 of the District Court's decision, the District Court said, while plaintiff's positive construction is too far removed from the claim language and its contextual written description, the mere fact that pieces may be possible that they can be moved, metaphysically can be moved, that's not the Court's claim construction. It's as called for by the game rules or game strategy, and under that construction, there can be no infringement because the tower piece cannot move. What you would have to do is redesign the game. You would have to get rid of the construction, get rid of the instruction that says don't move the tower pieces. You'd have to redesign the tower so it has a reactive surface on all sides, so no matter where you put it on the board, potentially a laser beam can hit it and make the explosion go off and the lights go on. You'd have to change instructions to tell the players, well, how do you move this tower piece in reference to the other pieces? One space at a time, horizontal, vertical, diagonal, how do you move them? There's nothing in there. And then you would have to change the instructions to provide a strategic manner of setting up the game. If I put that on some edge facing inward, all of those arguments you just made are irrelevant, right? No, actually, no, because... You'd place it facing inward and then, of course, it can be struck by a laser beam. But there would still be no strategy in the setup and they still would not be able to... Sure, if I put it in the corner, that means you've got to position your mirrors in a significantly different manner to hit me than if I put it in the middle of the game. But each player would be on the level playing field. They'd have to do the same thing on each side of the board and the patent is very clear, Your Honor, that says that they can agree to a setup but both sides of the board have to look the same. I can find that for you. In fact, why would I do that? Maybe if I want to play my five-year-old son, I would let him put his in the corner and I put mine in the middle. That's Column 8, Lines 20 to 25, Your Honor. Column 8, Lines 20 to 25 of the patent said... Yes, in the specification, because the district court read in this setup, additional setup requirement into his construction. And here as it says, it says, likewise, this is Column 8 of the patent, Lines 20 to 25. Likewise... Isn't the real problem here is you didn't contest this claim construction though? The claim construction is broad enough to allow setup to be part of the movability. You didn't contest that. We did contest it, Your Honor. You're not contesting it here. Are you contesting it on appeal? I'm contesting that it's not just setup, it's strategic setup. The court said in its summary judgment decision that part of being movable means setup according to game strategy. There is no strategy involved in the setup. And if I would be permitted to read from Column 8, Your Honor, it says, likewise, at the start of a game, the pieces can be arranged in any agreed upon configuration as long as the placements of pieces in each player's set is the same arrangement. There is no strategic element to setting up the pieces. And the district court said there was. And to that extent, his modified claim construction is incorrect because his construction said as called for by the rules of the game or game strategy, strategy are things you implement during game play. It's things you do to give yourself an advantage over your opponent. That's not setting up the game. Rather than change, isn't it a situation where you have a different construction of the court's construction than what the court intended? No, not at all, Your Honor. I think what the court did was he came out with a construction, then in midstream in that opinion, revised it. And the revision has no basis in this patent. Any final comments for us, Mr. Nicodema? Yes, on the issue of obviousness, I think the question here about board games, physical board games versus electronic board games, the inventor of the 242, his declaration shows that the worlds merge. And I think innovation's argument really goes to the amount of time it may take to convert one to the other and not whether one skilled New Yorker would look to the combination in the first place. And that's where the district court was wrong. Thank you, Your Honor.